This matter, number 171180, Eduardo Soto-Cintron, et al. v. United States Good morning, your honors. My name is Jorge Martinez Luciano. I represent the appellants in this case. And if it pleases the court, we would like to set aside two minutes for rebuttal. Yes, certainly. Your honors, this is a novel case in our district in the sense that in an FDCA action alleging false arrest for the first time ever, the court applied the reasonable suspicion standard that was developed under Tariff v. Ohio, which has not been adopted by the Puerto Rico courts, instead of the probable or reasonable cost standard that has been traditionally been recognized as the standard under Puerto Rico law. Our opening brief argues extensively why the district court erred in applying that standard. However, the government's brief seems to have abandoned Tariff. It was the only argument that was raised or the theory that was raised below for summary judgment. The government asked the court to incorporate Tariff, and the government's opening brief does not even cite Tariff v. Ohio. It does not mention it and goes directly to the standard that we understand is applicable to this case, which is the reasonable or probable cost standard. In so doing, the government pretty much says that the summary judgment record has two instances in which in this controlled delivery sting operation at a postal office in Ponce, the government could reasonably understand that the plaintiffs in this case had committed a felony. Mainly, the plaintiffs, as the record shows, are two postal service customers that have PO Buffs in that office, and they went to retrieve their mail. They arrived in their home vehicle, which is a pickup truck. It was Mr. Sotocintron and his minor son, a teenager at the time, and the government says that they first became suspicious of the plaintiffs because they lingered for some time in their car in their parking lot. The record does not reveal how much time is some time. We have no idea. However, we fail to see how this is suspicious at all. At all times, this is a sting operation where the government has over ten agents, at least seven of them posted outside the postal office, an arrest team of five, and two posted in the building. The child or the teenager goes in. It is uncontested that he comes out with some envelopes, letter envelopes in their hands, and the contraband here, the government here knew that what they were expecting to be picked up was a package containing six handguns, six illegal Glock handguns, which I don't see how they would fit within regular mail envelopes. It is then that the officers intervene, and the officers state that there was a radio malfunction. None of this is related in the operation report that was filed after the operation, but they say that the fact that the plaintiffs lingered in the car for some time, coupled with the fact that they lost radio communication as the child was coming out, was sufficient for them to reasonably believe that a felony could be committed. We posit that this is not the case, given the large amount of officers that were at all times with eyes on both plaintiffs, inside and outside the building, and the fact that they knew what the package was, what the legal package was, and that there is no way that the plaintiff could have been carried, the plaintiff's son or his plaintiff as well, the minor, could be carrying six guns in parcel letter envelopes. The government's fallback argument is that they seem to equate that, they posit that if this was a Bivens case, the officers would be entitled to qualified immunity, and therefore if that is the case, then FTCA liability does not attach. Our argument is that while indeed it is possible that entitlement to qualified immunity could in some cases also mean that the government is not liable under the FTCA, the fact is that qualified immunity is not a defense that is available directly to the government. It's a defense for individual capacity officers, and the analysis still needs to be made whether or not the conduct for which the officers would have qualified immunity would be a violation of state law, or in this case, territory, Puerto Rico law. In this case, we believe that no reasonably objective officer within those sets of circumstances that we have described would believe that either Mr. Soto-Cintron or his son. Counsel, this is Judge Lopez. I might just ask a question. Given that sort of reasonableness, reasonable cause to believe applying Puerto Rico law, or if you ever have a need to get to the qualified immunity analysis, the centrality of reasonableness in the Fourth Amendment analysis, is there really any substantive difference in assessing the conduct of the officers involved? Is there really any substantive difference between the reasonable cause analysis and the qualified immunity analysis? Well, it could be said that the qualified immunity standard, which is objective legal reasonableness, and the Puerto Rico standard, which only mentions reasonableness, could be equated. Our contention is that on the facts that are on this summary judgment record, where this is a bivens action, these officers would not be entitled to qualified immunity on this record. Counsel, just on a factual matter, in terms of the reasonableness, the reasonable cause to believe that a felony has been committed, the officers here, they only intervene, they only, if you will, move against your clients when the vehicle started to move away. And at that point, with the situation still unfolding, there was a concern that that vehicle would be moving away with the guns. So they had to make a quick decision. Well, Your Honor, not in this particular case, because the fact is that they had eyes on the vehicle at all times, and they knew that the contraband was at the post office when Sotosintron arrives. And Sotosintron stays in the pickup truck, so there is no way that they could possibly think that Sotosintron has the package, because the package had to be retrieved in the mail. Isn't this where there was some kind of radio miscommunication, which might have suggested that the guns were now actually in the car, although it seems difficult to reconcile that with that observed letter that I guess the son carried into the vehicle. At the moment when the officers intervened, wasn't there some uncertainty as to whether the guns might be in the car? Maybe there was some sloppiness there, but given the state of the knowledge of the officers involved, couldn't they legitimately argue that at least at that moment when they had to make a decision about what to do, they had reasonable cause to believe that a firearm was being committed? These guns were being carried away. Well, Your Honor, not in this record, and I'll explain why. If I may, my time expires. Of course, yes. On this record, Agent Gonzalez, I believe is the name of the chief officer that was supervising the agents that were outside. He knows, he has eyes and he knows whether or not someone approached Mr. Sotosintron in the truck, and there is no evidence suggesting, no agent is remotely saying that they had reason to believe that anybody other than his son could have given him anything. The package was in the control of the postal inspection officers inside the mail office, and they know presumptively who they handed it to, but the seven officers that intervened with my clients, all of them were posted outside. We have established that they know that Mr. Sotosintron has not received the package, and they see this teenager coming out of the building with just holding envelopes, and there's no way that six Glock guns could fit in parcel-sized envelopes. So regardless of whether or not indeed there was a radio miscommunication, and they were not able to confirm what was going on with the agents inside the building, the fact is that they could see with their own eyes that this teenager was not carrying the contraband. Judges, additional questions? Thank you. I'm sorry, thank you. I'm good, thank you. Okay. We'll hear from the government. Good morning. May it please the Court. Maiden Schwartz for the United States. I'd like to begin by correcting a couple of factual misstatements by my fellow counsel here. The first, you seem to imply that we did not argue below that the facts supported a finding of probable cause or could not be determined on the basis of qualified immunity. That's incorrect. I can point this Court to the appendix at page 96 to 97. That's docket entry 33 at 12 to 13. That's our memorandum of law in support of our motion for summary judgment. And I will quote, qualified immunity serves as an absolute bar to suit. So this was argued below as an alternate basis, and it is the ground on appeal that we think makes the most sense for this Court to rule, especially in light of D.C. v. Westby. And the reason for that. Counselor, are you abandoning your Terry argument? It's not abandoned, Your Honor, but just given the legal landscape of this issue, and especially, as I mentioned, D.C. v. Westby, it seems clear that the most rational path to affirmance on appeal is through the qualified immunity analysis, and if not that, then through the probable cause analysis, because that avoids the need to import Fourth Amendment criminal law and decide whether there's a hole in the Puerto Rico law. It's a much simpler path of analysis. Counselor, it seems to me you're shifting ground yet again, because when you're briefing, it's only at the end of your brief that you offer qualified immunity as an alternative basis. Your primary argument seems to be that just applying the Puerto Rico law, a reasonable cause to believe that the family has been committed, that that is an appropriate basis from the government's point of view on which to decide this case. So now it does seem you're shifting your argument. Your Honor, we assert strongly that there was a basis for probable cause in this case. However, even if there was not probable cause, there was at the very least the ability of a reasonable officer to believe that there was probable cause, which is all you need for qualified immunity. So qualified immunity is a slightly lower bar than probable cause, which this Court has recognized is already a low bar. And DC v. Westby came out after we finished the briefing in this case. And one of the things it says in footnote 7 is that the courts should, quote, think hard and then think hard again before addressing both qualified immunity and the merits of the underlying claim. So partially on that, we have shifted our emphasis a little in the sense that it now seems that the Supreme Court's preference is that cases like this be decided on qualified immunity where that would dispose of all the plaintiff's claims. And that is the case here. I just want to pin down one point. Going back to Judge Thompson's question about whether you have abandoned your Terry argument on appeal, you said this morning it's not an abandonment but. So in your brief, the only line that I could find that suggests a Terry level of analysis, officers, I'm quoting, must in good faith be able to detain a person they reasonably suspect to have extremely dangerous contraband. So is that enough to say that you have not abandoned it or have you abandoned reliance on the Terry standard? It should be enough to show that we haven't abandoned it, but it is certainly the more arguable, the closer question and the more complicated question on appeal. So given that, we chose to focus our energies in the limited space. What's the more complicated question? The question of whether there is a hole in the Puerto Rico law related to detentions based on reasonable suspicion as opposed to arrest. There's also the sort of more complex factual inquiry of whether these plaintiffs were actually subject to an arrest or merely a detention. And so just given the existence of those issues, where there was a clear path to affirmance, again, we emphasized those paths in our brief, both probable cause and qualified immunity. Counselor, on the issue of qualified immunity, are you arguing that because the Federal Tort Claim Act says we should apply local law, are you saying that Puerto Rico would recognize qualified immunity as a defense or are you saying that we should incorporate federal qualified immunity law into the FTCA? I'm saying that this court has already done the latter. And Abreu Guzman actually says, quote, our finding that agents could have an objectively reasonable belief that they had probable cause, close quote, which is a qualified immunity finding, that that extinguishes any basis for finding liability for false arrest under Puerto Rico law. Well, have we specifically said that or have we just continued to say we assume that Puerto Rico would recognize this? So it was a holding in Abreu Guzman because the court had to deal with the false arrest claims under Puerto Rico law. And they held that the analysis that they had done under the Bivens claim, the qualified immunity analysis, that that extinguished any basis for finding false arrest under Puerto Rico law. I'm not sure if I agree, but go ahead. Okay, thank you. And again, just additional support for deciding this case on qualified immunity versus probable cause. The think hard language that I quoted from Westby is actually a quote from an earlier Supreme Court case where it said, courts should think hard and think hard again before turning small cases into large ones. And we can tie that together with Sotomayor's concurrence in Westby, where she actually thought that the court shouldn't have reached the probable cause analysis at all, that the qualified immunity analysis was sufficient to dispose of all the claims. She posited that maybe the court reached probable cause in order to be certain that the state law claims were also disposed of because of that analysis. But she also said the qualified immunity analysis may well do the same anyway. So as here, especially where there's binding precedent saying that a qualified immunity analysis extinguishes any possibility of a false arrest claim under Puerto Rico law, that should be the, again, quickest, easiest, simplest. So let's get into that. Sure. I didn't see this emphasized in either brief, which is why I have a question on it now. But in paragraph 8 of Gonzalez's declaration, actually 8 and 9, paragraph 8, he says, while both vehicles were still in the parking lot, a subsequent radio transmission from the USPS inspector posing as a Postal Service employee indicated the package had been delivered to the suspect who was then exiting the post office. The suspect matched the description of the driver of the white Ford 150. Paragraph 9, a USPS inspector then radioed that the red pickup truck containing the plaintiffs was leaving the parking lot. It seems to me that that, I mean, just based on those two paragraphs, it suggests he did not. And what's the basis for stopping the red pickup truck based on that information? Sure. So two responses to that, Your Honor. First, in his declaration, it's not clear that the information that the suspect matched the driver of the white truck was actually conveyed over the radio. He also, in that declaration, mentions that the drivers of the red truck who were the plaintiffs, which obviously that couldn't have been conveyed over the radio at that time. So his relaying of the facts, it seems likely that it includes facts learned later in trying to get a pre-picture of what happened. Or based on his recipient observations. No, Your Honor. I mean, it's his declaration. Your Honor, Officer Gonzalez was a perimeter agent. So there were post office USPIS agents posted inside the post office and outside in the parking lot. The ATF agents who conducted the stop were at the perimeter. So they were not inside the parking lot. And even the fact that the red truck and the white truck had arrived at the post office, that was relayed to Officer Gonzalez by radio. So if we were just looking at the summary judgment question on probable cause, all of those unknowns that you just suggested would weigh in favor of the plaintiff, right? Why is it different for qualified immunity? So qualified immunity is different only because it says even if there wasn't actually probable cause, which I want to be clear the government maintains that there was, and I'll explain more about that in a moment. Even if there wasn't probable cause, if the agent conducting the stop was not or should not have been aware that his actions were clearly unlawful, if there wasn't a case on point that he should have been aware of that says this particular action is just beyond debate unlawful, that beyond debate language is a quotation from the case law, then he's entitled to qualified immunity. So it's a lower standard than probable cause. And we're supposed to engage in all inferences that support the version that you just described as opposed to what he said? So on summary judgment, the court should take the evidence, so not unsubstantiated suppositions such as that he had eyes on whatever, but the evidence in the light most favorable to the plaintiffs and reasonable inferences therefrom. Judges, additional questions of the government? Just very quickly, I understood counsel to say that there were a couple of factual misstatements from opposing counsel. I think she described one being the mischaracterization of how the government argued the case below, but I never heard what the other factual misrepresentation or mischaracterization of the record was. Did you have a second factual mischaracterization, Mary? I did, Your Honor, and it was that I mentioned just very briefly. He said several times that the agents who conducted the stop had eyes on them at all times. That's not supported by the record. That's an unsubstantiated assertion that shouldn't be credited on summary judgment. Again, the evidence that does exist is that the ATF agents were stationed at the perimeter, which included an access road to the post office. So there's simply no evidence on the record that the agents who conducted the stop had eyes on the plaintiffs or could see what was happening. What we do know that they had was the information that the package had been delivered and then the information that the red truck was leaving, combined with the earlier information they'd received by radio that the occupants of the red truck had lingered, which they found suspicious. So putting those three together in context of the operation that they knew was happening and given the source of those radio transmissions, which was from fellow law enforcement officers, it was reasonable for the ATF agents to conclude that there was at least a probability or a substantial chance that the red truck contained weapons, and that is all that is required for a finding of probable cause. Counsel, were those ATF agents at the perimeter, were they in a position to see the son leave the post office with simply a letter in his hand as opposed to a package of some kind? There is no evidence in the record one way or the other, Your Honor. However, what there is, is again the radio transmission that the occupants of the red truck had lingered before the boy went into the post office, such that that could create an inference in the mind of the agent that some sort of handoff was in the offing, which he affide that in his experience that was a common way for these sorts of deliveries to be handled, that one person would pick it up and then immediately hand it off to someone else. Thank you. If it pleases the Court, I would like to quickly address the factual misstatements that I have been imputed with. Our argument, and we reiterate that argument, is that the trust of the government's argument below was the Terry Stubb issue. Pages 91 through 95 of their summary judgment discussion, and then again, pretty much half of their reply brief below are attempting to persuade the district court that Terry should be applied, that the court should apply a reasonable suspicion standard. I understood you to be saying that that was the argument they had abandoned on appeal. I think the question is, are you also saying that they did not argue probable cause or qualified immunity below? They did argue qualified immunity. The other issue has to do with my repeated assertion that the agents had eyes on the outside of the post office. Well, this is summary judgment, and one of the actions of summary judgment is that reasonable inferences are not taken in favor of the moving party, but rather in favor of the non-moving party. Here you have seven agents outside what they call perimeter agents, not two or three, seven agents. And according to their own declarations, they paid enough attention to the plaintiffs to know that they lingered for someone's specified time in the car. So they had eyes on the car. And according to their own statement, that supposedly made them suspicious. So one can infer that they would keep an eye on this suspiciously acting red truck driver. One would also presume that if they're looking for someone, that's a very reasonable inference, if seven ATF agents are trying to find out if someone is stepping out of the post office building with illegal contraband, they would be watching the doors to see who comes out. Questions, judges? No, thank you. I'm fine, thank you. Thank you, counsel. Thank you both.